**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION**

| | |
|---|---|
| LUIS DANIEL ANDINO SALGADO,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., EQUIFAX INFORMATION SERVICES, LLC, and TRANS UNION LLC,<br><br>Defendants. | Case No.: 3:25-cv-01406<br><br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Luis Daniel Andino Salgado ("Plaintiff") respectfully brings this action against Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Trans Union LLC ("Trans Union"), and states as follows:

**INTRODUCTION**

1.      This is an action to recover damages for violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq*. ("FCRA").

**JURISDICTION AND VENUE**

2.      This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because substantial part of the events or omissions giving rise to the claim occurred in Connecticut.

**PARTIES**

4.      Plaintiff is a natural person residing in Ansonia, Connecticut, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

1

5.      Defendant Equifax Information Services, LLC ("Equifax") is a consumer reporting agency that maintains a principal place of business located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309. Equifax may be served through its registered agent Corporation Service Company located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

6.      Defendant Experian Information Solutions, Inc. ("Experian") is a consumer reporting agency that maintains a principal place of business located at 475 Anton Boulevard Costa Mesa, California 92626. Experian may be served through its registered agent C T Corporation System located at 330 North Brand Boulevard, Glendale, California 91203.

7.      Defendant Trans Union LLC ("TU") is a consumer reporting agency that maintains a principal place of business located at 555 West Adams Street, Chicago, Illinois 60661. Trans Union may be served through its registered agent Illinois Corporation Service Company located at 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

## FACTUAL ALLEGATIONS
**Plaintiff Discovers the Identity Theft**

8.      On or about February 9, 2025, Plaintiff contacted Capital One to apply for a credit card.

9.      During the process, he was informed that an account in his name already existed, despite having no knowledge of or involvement with such an account.

10.      Concerned by this information, Plaintiff requested a copy of his credit reports from all Defendants.

11.      Upon review of his credit reports, Plaintiff was stunned to discover multiple accounts that he did not recognize, authorize, open, or benefit from.

12.      Specifically, TU and Equifax reported the following accounts (hereinafter the "Fraudulent Accounts"), which Plaintiff did not apply for, authorize, consent to, or benefit from:

a. AMSHER COLLECTION SERVICES
Account Number: ****8134
Date Opened: 11/01/2024
Status: Collection
Balance: $470
Original Creditor: T-MOBILE

b. CAINE & WEINER COMPANY INC
Account Number ******76
Date Opened: 08/01/2024
Status: Collection
Balance: $146
Original Creditor: PROGRESSIVE

c. CAPITAL ONE BANK
Account Number: ***********6654
Date Opened: 11/4/2021
Status: Charge Off
Balance: $962

d. JEFFERSON CAPITAL SYSTEM
Account Number: *********2566
Date Opened: 12/07/2023
Balance: $438
Original Creditor: SPRINT

e. LVNV FUNDING LLC (LVNV)
Account Number: ***********6561
Date Opened: 03/21/2024
Status: Collection
Balance: $642
Original Creditor: CREDIT ONE BANK

f. MAX AUTO SALES INC (MASI)
Account Number: 154**
Date Opened: 06/12/2017
Status: Paid as Agreed/Closed
Balance: $0

g. MIDLAND CREDIT MANAGEMENT (MCMI)
Account Number: *****9326
Date Opened: 03/26/2024
Status: Collection
Balance: $1,186
Original Creditor: THE BANK OF MISSOURI

13.     While Plaintiff could not access his Experian credit report in February 2025, upon information and belief, Experian reported the Fraudulent Accounts as well.

14.     In addition to the Fraudulent Accounts, TU, Equifax, and – upon information and belief – Experian also reported numerous other categories of inaccurate personal information which did not belong to Plaintiff.

15.     These included:

a. Addresses that Plaintiff has never resided at, visited, or been associated with, including:
   i. 201 S Hancock St, McAdoo, PA 18237
   ii. 575 N Wyoming St, Hazleton, PA 18201
   iii. 122 E Maple St, Hazleton, PA 18201
   iv. 38 N Broad St, West Hazleton, PA 18202
   v. 4730 Casa Espana St, San Antonio, TX 78233
   vi. 575 N Broad St, West Hazleton, PA 18202
   vii. 205 S Pine St, Hazleton, PA 18201
   viii. PO Box 2567, Hazleton, PA 18201
   ix. 498 Forrest St Apt A, Marion, MS 39342
   x. 220 N Washington St, Hope, AR 71801
   xi. 102 Jefferson St, Harrodsburg, KY 40330
   xii. 122 S East St, New Boston, TX 75570
   xiii. 102 Jefferson St Apt 2, Harrodsburg, KY 40330
   xiv. 655 Alter St, Hazleton, PA 18201
   xv. 11200 Perrin Beitel Rd Apt 1108, San Antonio, TX 78217

b. Phone numbers that are not, and have never been, associated with Plaintiff, including:
   i. (570) 578-9245
   ii. (570) 578-5349
   iii. (570) 501-1688
   iv. (570) 459-2932
   v. (484) 403-6555
   vi. (903) 733-5042
   vii. (570) 233-1925
   viii. (570) 454-5962
   ix. (570) 501-1088
   x. (570) 599-7190
   xi. (570) 459-9075
   xii. (903) 556-8916
   xiii. (570) 455-8784
   xiv. (903) 559-9049

    c.   Employment information:
        i.   Greif Bros

16.     Furthermore, TU's credit report contained hard credit inquiries with whom Plaintiff had never applied for credit or initiated any transaction, including:

- Mission Lane – dated August 9, 2023
- TBOMMilestone – dated July 15, 2023

17.     Plaintiff did not initiate, authorize, or benefit from the Fraudulent Accounts nor the foregoing inquiries.

18.     Based on the volume and nature of the inaccurate information, Plaintiff reasonably concluded that he had been the victim of identity theft.

19.     On or about February 21, 2025, Plaintiff filed an Identity Theft Report with the Federal Trade Commission ("FTC ID Theft Report"), identifying the Fraudulent Accounts and related information.

**Plaintiff's Dispute to Defendants in February 2025**

20.     On or about February 25, 2025, Plaintiff submitted written disputes and block requests to Defendants, formally disputing the fraudulent accounts and identifying personal information that did not belong to him.

21.     Plaintiff expressly stated that the disputed entries were not his and were the result of identity theft.

22.     In support of his disputes, Plaintiff provided sufficient identifying information to locate his credit file, as well as a copy of his FTC Identity Theft Report.

23.     He also enclosed a list of the fraudulent accounts and addresses, and documentation establishing that the disputed information was inaccurate and did not pertain to him.

24.     Plaintiff specifically requested that Defendants block the reporting of all fraudulent

and inaccurate accounts, unauthorized addresses, and personal information from his consumer reports.

### Equifax's Unreasonable Dispute Reinvestigation

25.     By letter dated March 5, 2025, Equifax responded to Plaintiff's dispute and block request by requesting Plaintiff send Equifax a copy of his Social Security card and driver's license.

26.     This request was puzzling since Plaintiff's dispute and block request contained a copy of the requested documents.

27.     By letter dated March 5, 2025, Equifax wrote to Plaintiff that it refused to block the Fraudulent Accounts, citing Section 605B(c) of the FCRA.

28.     On or about April 22, 2025, Plaintiff accessed his Equifax consumer report.

29.     Plaintiff noticed that Equifax deleted some of the Fraudulent Accounts but continued to report LVNV and MCMI's account, which were part of the Fraudulent Accounts.

30.     Equifax failed to adequately review all of the information provided to it by Plaintiff.

31.     Equifax did not conduct a reasonable reinvestigation.

32.     If it did, it would have realized that the information it reported was inaccurate and the result of identity theft.

33.     Equifax violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft, despite having sufficient evidence to do so.

34.     Equifax violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file, despite having sufficient evidence that the information was the result of identity theft.

**TU's Refuses to Investigate**

35.     By letter dated March 7, 2025, TU responded to Plaintiff's dispute that the dispute had not been made by Plaintiff or an authorized party and therefore declined to process it.

36.     Despite this refusal, Plaintiff subsequently obtained a copy of his updated TU credit report on or about April 22, 2025, which showed that TU had removed some Fraudulent Accounts, but continued to report the fraudulent accounts from LVNV, MCMI, and MASI.

37.     TU failed to adequately review all of the information provided to it by Plaintiff.

38.     TU did not conduct a reasonable reinvestigation.

39.     If it did, it would have realized that the information it reported was inaccurate and the result of identity theft.

40.     TU violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft, despite having sufficient evidence to do so.

41.     TU violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file, despite having sufficient evidence that the information was the result of identity theft.

**Experian Refuses to Investigate**

42.     By letter dated March 12, 2025, Experian responded to Plaintiff's dispute that the dispute had not been made by Plaintiff or an authorized party and therefore declined to process it.

43.     Plaintiff obtained a copy of his updated Experian credit report on or about April 25, 2025, and confirmed that Experian continued to report multiple entries of inaccurate and fraudulent information, including the LVNV and MCMI accounts.

44.     Experian failed to adequately review all of the information provided to it by Plaintiff.

45.     Experian did not conduct a reasonable reinvestigation.

46.     If it did, it would have realized that the information it reported was inaccurate and the result of identity theft.

47.     Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft, despite having sufficient evidence to do so.

48.     Experian violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file, despite having sufficient evidence that the information was the result of identity theft.

**Plaintiff's Damages**

49.     Plaintiff did exactly what he should have done upon realizing he was the victim of identity theft.

50.     Plaintiff filed the FTC ID Theft Report.

51.     Plaintiff disputed and requested Defendants block the Fraudulent Accounts.

52.     Plaintiff provided Defendants with all the information they needed to remove and block the inaccurate information and Fraudulent Accounts reported on their credit reports about Plaintiff.

53.     Instead, Defendants disregarded Plaintiff's credible and substantiated disputes.

54.     As a direct result of Defendants' ardent refusal to block all of the Fraudulent Accounts and inaccurate information reported, which were the product of identity theft,

Defendants continue to report derogatory and inaccurate information on Plaintiff's credit report.

55.    Defendants have a long and checkered history of disregarding the credit reporting rights of identity theft victims under the FCRA.

56.    For example, in the very similar case of *April Hendrix vs. Equifax, et. al.,* (N.CM.D. C.A. No. 1-16-cv-201), an identity theft victim sued Defendants for their refusal to properly ?investigate disputed identity theft information on her credit reports.

57.    The *Hendrix* suit put Defendants on notice several years ago that their respective policies and procedures for handling identity theft victims' requests and disputes were woefully inadequate.

58.    As a standard practice, Defendants do not conduct independent investigations in response to consumer disputes.

59.    Instead, they merely parrot the response of the data furnishers, like LVNV, MCMI, and MASI here, despite numerous court decisions admonishing this practice. *See Cushman v. Trans Union Corp.,* 115 F.3d 220, 225 (3d Cir. 1997) (the 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources.  Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230-31 (D.N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.,* 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

60.    Defendants are aware of the shortcomings of their respective procedures and intentionally choose not to comply with the FCRA to lower their costs.

61.    Accordingly, Defendants' violations of the FCRA are willful.

62.    As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove an open and derogatory loan account that was the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove an open and derogatory loan account that was the product of identity theft.

63.    As a direct result of Defendants' continued reporting of inaccurate and fraudulent information, Plaintiff was denied a credit card by Capital One on or about April 9, 2025.

64.    The denial was based, in part, on information obtained from Defendants Equifax, Experian, TU, and cited limited credit experience, the presence of a collection account.

65.    Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by Defendants.

## COUNT I
### 15 U.S.C. § 1681e(b)
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**
**(Against All Defendants)**

66.    Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein.

67.    The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

68.     On numerous occasions, Defendants published patently false consumer reports concerning Plaintiff.

69.     Despite actual knowledge that Plaintiff was the victim of identity theft, and each of them receiving substantiated, detailed disputes from Plaintiff detailing which accounts did not belong to him due to identity theft, Defendants readily and repeatedly sold such false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness by suggesting that Plaintiff had a loan account and that he was delinquent on at least one occasion, resulting in adverse action by prospective creditors.

70.     Given that each Defendant had conclusive evidence that they continue to report inaccurate information about Plaintiff, each Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

71.     Specifically, despite conclusive evidence that the accounts did not belong to Plaintiff, Equifax continued to report the fraudulent LVNV and MCMI accounts, TU continued to report the LVNV, MCMI, and MASI accounts, and Experian continued to report the LVNV and MCMI accounts.

72.     Notably, Plaintiff was incarcerated when the LVNV and MCMI accounts were opened such that it was impossible for him to establish those accounts.

73.     Still, each Defendant continued to report those derogatory accounts as belonging to Plaintiff despite receiving evidence that Plaintiff did not open those accounts.

74.     As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage as described herein.

75.     Defendants' conduct, actions, and inactions were willful, rendering Defendants

Equifax, Experian, and TU liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

76. Alternatively, Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

77. Plaintiff is entitled to recover attorneys' fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**
**(Against All Defendants)**

78. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

79. The FCRA mandates that a credit reporting agency ("CRA") conduct an investigation of the accuracy of information "if the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. See 15 U.S.C. § 1681i(a)(1).

80. The Act imposes a thirty (30) day limitation for the completion of such an investigation. Id.

81. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is *required* to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A) (emphasis added).

82. Plaintiff disputed the inaccurate information with each Defendant and requested that each Defendant delete specific items in his credit file that are patently inaccurate, misleading,

and highly damaging to his, namely, the Fraudulent Accounts that were the product of identity theft.

83.    In each dispute, Plaintiff provided a copy of the FTC Identity Theft Report.

84.    Despite actual knowledge and ample evidence that Plaintiff was the victim of identity theft, and in response to Plaintiff's disputes, Equifax conducted virtually no investigations of Plaintiff's disputes, or such investigations were so shoddy as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

85.    Despite actual knowledge and ample evidence that Plaintiff was the victim of identity theft, and in response to Plaintiff's disputes, Experian conducted virtually no investigations of Plaintiff's disputes, or such investigations were so shoddy as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

86.    Despite actual knowledge and ample evidence that Plaintiff was the victim of identity theft, and in response to Plaintiff's disputes, TU conducted virtually no investigations of Plaintiff's disputes, or such investigations were so shoddy as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

87.    Each Defendant violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the thirty (30) day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

88.    Specifically, despite conclusive evidence that the accounts did not belong to Plaintiff, Equifax continued to report the fraudulent LVNV and MCMI accounts, TU continued to

report the LVNV, MCMI, and MASI accounts, and Experian continued to report the LVNV and MCMI accounts.

89.    Notably, Plaintiff was incarcerated when the LVNV and MCMI accounts were opened such that it was impossible for him to establish those accounts.

90.    Still, each Defendant continued to report those derogatory accounts as belonging to Plaintiff despite receiving evidence that Plaintiff did not open those accounts.

91.    As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damages as described herein.

92.    Defendants' conduct, actions, and inactions were willful, rendering Defendants liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

93.    Alternatively, Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

94.    Plaintiff is entitled to recover attorneys' fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### COUNT III
**15 U.S.C. § 1681c-2**
**Failure to Block Identity Theft Information**
**(Against All Defendants)**

95.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

96.    Each Defendant violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

97.    Plaintiff submitted ample evidence of the fact that he was an identity theft victim and that the Fraudulent Accounts were the result of identity theft and did not belong to Plaintiff.

Plaintiff further supported the fact that he was an identity theft victim by providing to Each Defendant with a copy of the FTC Identity Theft Report.

98.    Defendants were obligated to block the Fraudulent Accounts but failed to do so.

99.    Specifically, despite conclusive evidence that the accounts did not belong to Plaintiff, Defendants refused to block the Fraudulent Accounts. Equifax continued to report the fraudulent LVNV and MCMI accounts, TU continued to report the LVNV, MCMI, and MASI accounts, and Experian continued to report the LVNV and MCMI accounts.

100.    Notably, Plaintiff was incarcerated when the LVNV and MCMI accounts were opened such that it was impossible for him to establish those accounts.

101.    Still, each Defendant continued to report those derogatory accounts as belonging to Plaintiff despite receiving evidence that Plaintiff did not open those accounts.

102.    As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damages as described herein.

103.    Defendants' conduct, actions, and inactions were willful, rendering Defendants liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

104.    Alternatively, Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

105.    Plaintiff is entitled to recover attorneys' fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this honorable Court grant the following

relief against Defendants:

(a)    Declaratory judgment that Defendants violated the FCRA, 15 U.S.C. § 1681;

(b)    An award of actual, statutory, and punitive damages pursuant to 15 U.S.C. §§ 1681, et seq.;

(c)    An award of costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n and § 1681o; and,

(d)    Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby respectfully demands jury trial on all issues so triable.

Dated: Flushing, New York
      September 1, 2025

                                      **CONSUMER ATTORNEYS, PLLC**

                                      */s/ Emanuel Kataev*, Esq.
                                        Emanuel Kataev, Esq.
                                        6829 Main Street
                                        Flushing NY 11367-1305
                                        (718) 412-2421 (office)
                                        (718) 489-4155 (facsimile)
                                        ekataev@consumerattorneys.com

                                        *Attorneys for Plaintiff*
                                        *Luis Daniel Andino Salgado*